IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-01934-RBJ

MICHAEL OSTROWSKI,

    Plaintiff,

v.

CITY OF MONTROSE,

    Defendant.

# ORDER

This matter is before the Court on the City of Montrose's (hereinafter "the City") motion for summary judgment [ECF No. 41]. For the reasons stated below, the motion is granted, and final judgment will enter in favor of the City.

## FACTS

Mr. Michael Ostrowski brings this suit pursuant to 42 U.S.C. § 1983, claiming that the City failed to properly train two police officers on the correct procedure for handcuffing individuals whose wrists are larger than average. ECF No. 18 at ¶¶ 15–23. As a result, Mr. Ostrowski alleges that the City violated his Fourth Amendment right to be free from excessive force. *Id.*

The following facts are undisputed except as otherwise noted. On July 11, 2012, Montrose Police Officers Dennis Beery and Chris Velasquez arrested Mr. Ostrowski pursuant to a bench warrant. ECF No. 41-3 at ¶¶ 4, 6. Mr. Ostrowski did not resist arrest. ECF No. 18 at ¶ 9. Officer Beery handcuffed Mr. Ostrowski using a "single set of ordinary handcuffs." *Id.* at ¶

1

11; ECF No. 41-3 at ¶ 6.  Before his arrest, Mr. Ostrowski did not mention any wrist pain or that he was susceptible to wrist injuries.  ECF No. 41-3 at ¶ 6.  However, Mr. Ostrowski asserts that he did complain of shoulder pain.  ECF No. 45 at ¶ 12.  After handcuffing him, the officers walked Mr. Ostrowski to Officer Beery's patrol vehicle.  ECF No. 41-3 at ¶ 7.

Mr. Ostrowski is a "larger than average person," and he claims that his wrists are too big for a standard set of handcuffs.  ECF No. 18 at ¶¶ 5, 7.  He believes he is more susceptible to injury than the average arrestee due to the size of his hands.  ECF No. 45 at ¶ 3.  He also alleges that he cannot "bring his wrists behind his back without the use of unusual force."  ECF No. 18 at ¶ 6.  He attests that the officers had to "force [his] hands unnaturally close together," and that they had "to force the cuffs closed over [his] wrists."  *Id.* at ¶ 11.  He states that the officers were "strong-arming" him to get the handcuffs on behind his back.  Ostrowski Depo. ECF No 45-6 at 72:8–9.  Mr. Ostrowski claims that he told the officers that the "cuffs hurt."  *Id.* at 67:12.  When he complained of the pain, he alleges that the officers "basically told [him to] live with it."  *Id.* at 72:18.

When asked to enter the patrol vehicle, Mr. Ostrowski protested that his shoulder was bothering him, but he mentioned discomfort from "the handcuffs just once."  ECF No. 41-3 at ¶ 7.  Officer Beery drove Mr. Ostrowski directly to the Montrose County Jail.  ECF No. 41 at ¶ 15.  During the drive Mr. Ostrowski generally complained that he was "hurting," and he brought up his shoulder a few times.  ECF No. 41-3 at ¶ 9.  Mr. Ostrowski requested that the officers remove the handcuffs when they arrived at the jail.  ECF No. 41 at ¶ 16.  Officer Beery agreed to do so. *Id.*  This drive lasted less than three minutes.  ECF No. 41-3 at ¶ 8.

Shortly after arriving at the jail, Mr. Ostrowski was patted down, and his handcuffs were removed.  *Id.* at ¶ 10.  The City alleges that Mr. Ostrowski was uncuffed just over three minutes

after his request that the handcuffs be removed, and that he was in handcuffs for a total of no more than seven minutes and 13 seconds. ECF No. 41 at ¶¶ 18–19. After Mr. Ostrowski spent the night in jail, the issuing court quashed the warrant; and he was released on July 12, 2012. ECF No. 18 at ¶¶ 12–13.

Over two years later, Dr. Davis Hurley treated Mr. Ostrowski for injuries to his wrists. Hurley Depo. ECF No. 41-4 at 6:1–3. Mr. Ostrowski claims that he suffers from "severe muscle atrophy and numbness" and carpal tunnel syndrome. ECF No. 45 at ¶ 6–7. He alleges "general and special damages" including a "torn rotator cuff, nerve damage resulting in permanent numbness in both hands, cuts, bruises, medical expenses, physical impairment, pain, suffering, and severe emotional distress." ECF No. 18 at ¶ 14.

## DISCUSSION

### I.   Standard of Review

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (internal quotations and citations omitted). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.

### II.     Municipal Liability Claim Against the City

Mr. Ostrowski does not sue the officers in their individual capacities, but rather brings a municipal liability claim against the City. In general, a municipality cannot be held vicariously liable under § 1983 for the acts of its employees. *Monell v. Dep't of Soc. Servs. of New York,* 436 U.S. 658, 691–94 (1978). Rather, "[t]o establish municipal liability, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Jenkins v. Wood,* 81 F.3d 988, 993 (10th Cir.1996) (internal citations omitted).

A municipality's failure to train its employees adequately can constitute a municipal policy or custom for purposes of § 1983 under very narrow circumstances. *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."). A municipality's failure to train must amount to deliberate indifference to the rights of the citizens with whom the police officers come into contact. *City of Canton v. Harris,* 489 U.S. 378, 388 (1989). Here, Mr. Ostrowski claims the City failed to train the arresting officers properly in handcuffing larger individuals. ECF No. 18 at ¶ 18. Overly tight handcuffing can constitute excessive force in violation of the Fourth Amendment if it actually caused injury and if "an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight." *Cortez v. McCauley* 478 F.3d 1108, 1129 (10th Cir.2007).

In order to prevail against a municipality for failure to train in the use of force, "a plaintiff must first prove the training was in fact inadequate." *Brown v. Gray,* 227 F.3d 1278, 1286 (10th Cir.2000). Having done so, the plaintiff must then establish the following:

> (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which

> police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Id.* (internal quotations and citations omitted). The sufficiency of a municipality's training hinges on "the adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton,* 489 U.S. at 390. The plaintiff must do more than show that an individual officer "may be unsatisfactorily trained." *Id.* at 390–91. Finally, the specified insufficiency in the training program must be narrowly connected to the alleged injury. *Id.*

Mr. Ostrowski provides facts and details in his description of the two officers' conduct. He describes how the officers handcuffed him and why they should have used alternative techniques. He states that because he has large wrists and a large torso, "standard handcuffs are too small to safely restrain [him]." ECF No. 45 at 1, ¶ 1. He attests that the officers physically forced his hands together behind his back, and "jammed handcuffs over [his] wrists," thereby injuring his shoulders. *Id.* at 1. He alleges that Officer Beery said, "I could barely get the cuffs on, so they're pretty tight." *Id.* at ¶ 16. Mr. Ostrowski also claims that the officers "could and should have used two sets of cuffs in a chain (double cuffing) to prevent shoulder injuries and could and should have been equipped with a pair of oversized cuffs to avoid the nerve damage." *Id.* at 2.

But when it comes to the City's policies and practices, his allegations are quite different. He asserts that the City knew that its police force would encounter larger individuals. I accept that as a matter of common sense. However, the allegations that the City "failed to train its officers how to properly restrain arrestees who are too large for their arms to safely reach behind the arrestee's back or how to properly restrain arrestees with wrists too large for normal

handcuffs to be safely secured" and that the failure to train constituted deliberate indifference, ECF No. 18 at ¶¶ 18-19, are conclusory at best.

The City tenders, among other things, the affidavit of Shawn Bornschein who is a Detective for the City of Montrose's Police Department and who serves as an "FBI Arrest Control/Defensive Tactics Instructor." ECF No. 41-2 at ¶ 2. In that role, Detective Bornschein trains the City's police officers in "the proper use of force in accordance with FBI Arrest Control and Defense Tactics." *Id*. This includes instruction and training on "proper handcuff application," which encompasses "checking for proper fit, ensuring double-lock mechanisms are in use, and addressing larger than average sized wrists with alternative methods of restraint." *Id.* at ¶ 3.

Additionally, Detective Bornschein states that officers learn about the injuries that handcuffs can cause, how "to assess and respond to complaints of pain and tightness, observe arrestees for objective signs of injury, and to assess complaints of pain after handcuff removal to determine the need for medical care after an arrestee is no longer restrained." *Id.* at ¶ 4; ECF No. 41 at ¶ 7. On average, officers receive this training once every 18 to 24 months. ECF No. 41-2 at ¶ 5. Officer Beery completed the FBI Arrest Control and Defense Tactics training three times between December 2008 and July 2012. *Id.* at ¶ 6. Officer Velasquez graduated from the Law Enforcement Academy on August 13, 2010, and he fulfilled this training requirement once between August 2010 and July 2012. *Id.* at ¶ 7.

Mr. Ostrowski relies on excerpts from the deposition of Dan Montgomery, who formerly served as Chief of Police for the Westminster Police Department. Montgomery Depo. ECF No. 45-1. In his deposition, Chief Montgomery actually endorses the FBI curriculum on handcuffing as proper and representative of the training that the broader community of police departments

6

provides. *Id.* at 38–40; 59.  He explains that the body of literature on handcuffing, including the FBI materials, instructs police to use different techniques when handcuffing "very large, very obese, people who are limited in their mobility to get their hands close together behind them." *Id.* at 38:18–20; 38–40; 59.  Such alternative approaches include cuffing these individuals in front or using multiple sets of handcuffs.  *Id.* at 39:12–17.

Chief Montgomery does express concern about the officers' decision to arrest Mr. Ostrowski out of view of their dashcams.  *Id.* at 87:3–24.  He also critiques the choice to handcuff Mr. Ostrowski behind his back with a standard set of cuffs.  *Id.* at 110:3–15.  However, Chief Montgomery does not conclude from these two questionable decisions that the City's training was inadequate.  Even if Officers Beery and Velasquez did err in utilizing one set of standard handcuffs on Mr. Ostrowski, it would be unreasonable to infer from that isolated incident that the mistake resulted from improper training.  Chief Montgomery does not draw that conclusion, and neither does the Court.  Police officers can be adequately trained but still make mistakes.  Individual errors, by themselves, say "little about the training program or the legal basis for holding the city liable."  *City of Canton,* 489 U.S. at 391.

Additionally, Mr. Ostrowski makes numerous allegations regarding the severity of his injury and his predisposition to wrist pain.  ECF No. 45 at 2–5.  He offers photographs of his wrists, taken "approximately 18.5 hours" after the arrest, which he claims show swelling that resulted from the handcuffing.  ECF No. 45-3 at 1–6; ECF No. 45 at ¶ 2.  The Court does not discount the possibility that the handcuffing might have injured Mr. Ostrowski; however, an injury that occurs during an arrest does not necessarily indicate improper technique on behalf of the arresting officers, and it certainly does not establish a municipality's failure to train.  The crucial inquiry here is whether the City failed to properly train its entire police force in

handcuffing larger individuals and not whether the arresting officers did something wrong or whether Mr. Ostrowski suffered an injury.  Therefore, even if the handcuffing did hurt Mr. Ostrowski, that single injury does not demonstrate the inadequacy of the City's training program.

Mr. Ostrowski focuses not on the strength of his own case but rather on the City's lack of proof, which runs counter to the well-defined burdens of summary judgment.  Specifically, he states that the City offers no evidence that its officers were trained on anticipating the need for using oversized cuffs, that they were supplied with or required to carry oversized handcuffs, or that they were trained on how to adapt when the "arrestee was too large for standard cuffs."  ECF No. 45 at ¶¶ 24–27.  Mr. Ostrowski concludes that the "evidence of inadequate training is the lack of evidence, *i.e.,* the lack of evidence that [the City] properly trained [its] officers in the safe procedures for arresting a large individual."  ECF No. 45 at 2 (italics in original).  This is insufficient, at least after the City did come forward with evidence that the City's officers are trained in FBI handcuffing techniques which even plaintiff's expert endorses.

In sum, Mr. Ostrowski has not met his burden of offering specific evidence that, if believed, could permit a jury to conclude that the City's training program was inadequate.  Put another way, he has not shown that there is a genuine dispute of material fact as to the adequacy of the training provided to Montrose police officers, including the two officers involved in the subject arrest, on handcuffing procedures.  As such the Court does not reach the remaining elements of the claim.  The Court finds that the City is entitled to judgment as a matter of law.

## ORDER

For the reasons discussed above, the City of Montrose's motion for summary judgment [ECF No. 41] is GRANTED.  Final judgment will enter in favor of the City of Montrose.

Judgment will enter against the plaintiff, Mr. Michael Ostrowski.  As the prevailing party the defendant is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 26th day of October, 2015.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge